NO. 19-1314

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

UNITED STATES OF AMERICA,
Appellee

v.

SANDRO ZHININ,
Appellant

APPEAL FROM JUDGMENT OF CONVICTION AND SENTENCE
IN CRIMINAL NO. 17-cr-383 IN THE
UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BRIEF FOR APPELLEE UNITED STATES OF AMERICA

WILLIAM M. McSWAIN
United States Attorney

ROBERT A. ZAUZMER
Assistant United States Attorney
Chief of Appeals

EMILY McKILLIP
Assistant United States Attorney

615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
(215) 861-8416

# TABLE OF CONTENTS

JURISDICTIONAL STATEMENT ................................................................1

    I.    Subject Matter Jurisdiction .........................................................1

    II.   Appellate Jurisdiction ................................................................1

STATEMENT OF ISSUES ..........................................................................2

STATEMENT OF THE CASE ......................................................................3

    I.    Procedural History ....................................................................3

    II.   Statement of Facts ....................................................................4

        A.    Facts of the Case.................................................................4

        B.    Sentencing ..........................................................................8

STATEMENT OF RELATED CASES .............................................................15

SUMMARY OF ARGUMENT ......................................................................16

ARGUMENT ............................................................................................18

    I.    THE DISTRICT COURT DID NOT
        COMMIT PROCEDURAL ERROR AT
        SENTENCING .........................................................................18

        A.    Zhinin Did Not Preserve his Claims
            of Procedural Error ...........................................................20

        B.    Zhinin's Contentions That the District
            Court Did Not Adequately Address His
            Disparity Argument or the Psychologist's
            Report Are Meritless .........................................................24

1.    Zhinin's disparity argument did
       not merit more extensive discussion ..................... 40

2.    In the circumstances of this case,
       the district court was not required
       to explain why it was unpersuaded
       by Dr. Dattilio's report ........................................... 46

C.    The District Court Based Its Sentencing
       Decision on Proper Considerations ................................ 50

II.    THE SENTENCE IS SUBSTANTIVELY
       REASONABLE .......................................................... 56

CONCLUSION ............................................................ 59

# TABLE OF AUTHORITIES

## Cases

Chavez-Meza v. United States,
    138 S. Ct. 1959 (2018) .................................................. 34, 35

Gall v. United States,
    552 U.S. 38 (2007) ..........................................18, 32, 50, 57

Johnson v. United States,
    520 U.S. 461 (1997) ..................................................... 18

Puckett v. United States,
    556 U.S. 129 (2009) .......................................................21

Rita v. United States,
    551 U.S. 338 (2007) ................................................passim

Sealed Appellee v. Sealed Appellant,
    825 F.3d 247 (5th Cir 2016) ........................................ 44

United States v. Arsenault,
    833 F.3d 24 (1st Cir. 2016)........................................... 44

United States v. Atkinson,
    297 U.S. 157 (1936) ......................................................19

United States v. Ausburn,
    502 F.3d 313 (3d Cir. 2007) ........................................ 36

United States v. Bannout,
    509 F. App'x 169 (3d Cir. 2013) ..................................41

United States v. Begin,
    696 F.3d 405 (3d Cir. 2012)......................................... 36

United States v. Booker,
    543 U.S. 220 (2005) ................................................ 18, 24

United States v. Brown,
    330 F.3d 1073 (8th Cir. 2003) ........................................................ 45

United States v. Carey,
    589 F.3d 187 (5th Cir. 2009) .......................................................... 45

United States v. Cerno,
    529 F.3d 926 (10th Cir. 2008) ........................................................ 45

United States v. Cooper,
    437 F.3d 324 (3d Cir. 2006) ....................................................18, 25, 56

United States v. Cossey,
    632 F.3d 82 (2d Cir. 2010)...........................................................51, 53

United States v. Davenport,
    910 F.3d 1076 (8th Cir. 2018) ........................................................ 44

United States v. Dragon,
    471 F.3d 501 (3d Cir. 2006) ........................................................... 25

United States v. Eyster,
    386 F. App'x 180 (3d Cir. 2010)....................................................... 43

United States v. Fisher,
    502 F.3d 293 (3d Cir. 2007) ........................................................... 24

United States v. Flores-Mejia,
    759 F.3d 253 (3d Cir. 2014) ...............................14, 18, 20, 22, 23, 36

United States v. Frady,
    456 U.S. 152 (1982)......................................................................19

United States v. Friedman,
    658 F.3d 342 (3d Cir. 2011) ........................................................... 36

United States v. Goodale,
    738 F.3d 917 (8th Cir. 2013) .......................................................... 45

United States v. Grier,
    475 F.3d 556 (3d Cir. 2007) ...............................................51

United States v. Gunter,
    462 F.3d 237 (3d Cir. 2006) ............................................. 24

United States v. Hood,
    143 F. App'x 94 (10th Cir. 2005) ....................................... 45

United States v. Iglesias,
    535 F.3d 150 (3d Cir. 2008) ...............................................41

United States v. Jackson,
    467 F.3d 834 (3d Cir. 2006) ......................................... 24, 25

United States v. Jansen,
    431 F. App'x 51 (2d Cir. 2011) ......................................... 45

United States v. Jass,
    331 F. App'x 850 (2d Cir. 2009) ....................................... 45

United States v. King,
    604 F.3d 125 (3d Cir. 2010) ............................................. 39

United States v. Lessner,
    498 F.3d 185 (3d Cir. 2007)........................................25, 57

United States v. Mazer,
    604 F. App'x 126 (3d Cir. 2015) ....................................... 44

United States v. Merced,
    603 F.3d 203 (3d Cir. 2010) ............................................. 36

United States v. Morice,
    376 F. App'x 169 (3d Cir. 2010) ....................................... 36

United States v. Negroni,
    638 F.3d 434 (3d Cir. 2011) ............................................. 40

United States v. Olano,
    507 U.S. 725 (1993) ........................................................18, 19

United States v. Olfano,
    503 F.3d 240 (3d Cir. 2007) ........................................... 25

United States v. Olhovsky,
    562 F.3d 530 (3d Cir. 2009) ....................................... 37, 38

United States v. Padilla,
    415 F.3d 211 (1st Cir. 2005).............................................21

United States v. Passalaqua,
    508 F. App'x 141 (3d Cir. 2013)..................................... 39

United States v. Pavulak,
    700 F.3d 651 (3d Cir. 2012) ........................................... 44

United States v. Prawdzik,
    484 F. App'x 717 (3d Cir. 2012)..................................... 43

United States v. Puente,
    267 F. App'x 863 (11th Cir. 2008).................................. 45

United States v. Resnick,
    823 F.3d 888 (7th Cir. 2016) ......................................... 44

United States v. Robinson,
    603 F.3d 230 (3d Cir. 2010) ...........................................41

United States v. Ross,
    383 F. App'x 247 (3d Cir. 2010)..................................... 39

United States v. Sanders,
    409 F. App'x 555 (3d Cir. 2010)..................................... 39

United States v. Schweitzer,
    454 F.3d 197 (3d Cir. 2006) ......................................... 56

United States v. Scott,
        985 F.2d 576 (9th Cir. 1993) .................................................. 45, 47, 49

United States v. Stull,
        760 F. App'x 109 (3d Cir. 2019) ....................................... 44

United States v. Tomko,
        562 F.3d 558 (3d Cir. 2009) .........................................56-58

United States v. Underwood,
        507 F. App'x 223 (3d Cir. 2012) .........................................41

United States v. Walpole,
        543 F. App'x 224 (3d Cir. 2013) ....................................... 44

United States v. Wise,
        515 F.3d 207 (3d Cir. 2008) ............................................. 56

United States v. Young,
        470 U.S. 1 (1985) .................................................................19

United States v. Zabielski,
        711 F.3d 381 (3d Cir. 2013) ............................................... 39

## Statutes and Rules

18 U.S.C. § 2241(c) ....................................................................... 3

18 U.S.C. § 2251(a) ....................................................................... 3

18 U.S.C. § 2252(a)(4) ................................................................. 3

18 U.S.C. § 2423(b)....................................................................... 3

18 U.S.C. § 3231.............................................................................1

18 U.S.C. § 3553................................................................... passim

18 U.S.C. § 3582(c)(2) ............................................................... 34

18 U.S.C. § 3742 ..................................................................... 1

28 U.S.C. § 1291 ..................................................................... 1

Fed. R. Crim. P. 51(b) ..................................................... 20, 22, 23

U.S.S.G. § 2A3.1(b)(6) ............................................................ 9

# JURISDICTIONAL STATEMENT

## I. Subject Matter Jurisdiction

Because the defendant was charged in an indictment with violations of federal criminal law, the district court had subject matter jurisdiction over the case pursuant to 18 U.S.C. § 3231.

## II. Appellate Jurisdiction

Based upon the timely filing of a notice of appeal from the order of judgment in a criminal case entered on February 1, 2019, this Court has jurisdiction over this matter under 28 U.S.C. § 1291. In addition, this Court has jurisdiction pursuant to 18 U.S.C. § 3742 to review the sentence imposed on the defendant.

## STATEMENT OF ISSUES

1. Was the within-Guidelines life sentence imposed on the defendant who solicited an 11-year-old girl on the Internet, twice traveled across state lines for the purpose of sexually abusing the child, videotaped the second episode of sexual abuse, and returned a third time for the purpose of sexually abusing the child, procedurally reasonable?

2. Was the sentence imposed on the defendant substantively reasonable?

## STATEMENT OF THE CASE

### I. Procedural History

On July 20, 2017, a grand jury in the Eastern District of Pennsylvania returned an indictment of Sandro Zhinin, charging him with three counts of aggravated sexual abuse of a minor, in violation of 18 U.S.C. § 2241(c) (Counts One, Two, and Three); three counts of traveling to engage in illicit sexual contact with a minor, in violation of 18 U.S.C. § 2423(b) (Counts Four, Five, and Six); one count of production of child pornography, in violation of 18 U.S.C. § 2251(a) (Count Seven); and one count of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4) (Count Eight), all arising from the defendant's sexual abuse of an 11-year-old girl.

On August 8, 2018, pursuant to a written plea agreement, Zhinin pled guilty to Counts One through Three and Counts Seven and Eight. Zhinin also agreed to pay restitution and to forfeit his rights to the electronic devices used to commit the crime and to pay restitution. The government agreed that, at the time of sentencing, it would move to dismiss Counts Four, Five, and Six, and that it would recommend that the sentence in this case be imposed to run concurrently with the sentence imposed in *Commonwealth v. Sandro G. Zhinin*, in the Lehigh County Court of Common Pleas, No. 39-CR-0002272-2017.

On February 1, 2019, the district court imposed a within-guidelines sentence of life imprisonment on Counts One through Three, and 240 months' imprisonment on Counts Seven and Eight, with the terms of imprisonment on all counts to be served concurrently with each other and with the sentence imposed in the defendant's Lehigh County case. The district court dismissed Counts Four, Five, and Six pursuant to the plea agreement. The district court imposed a lifetime term of supervised release and a special assessment of $500, and ordered forfeiture as provided in the plea agreement. The defendant filed a timely notice of appeal.

## II. Statement of Facts[1]

### A.     Facts of the Case.

On March 11, 2017, the parents of an 11-year-old girl (referred to here as the "Minor") reported to the Northampton Borough Police Department that she was missing from her residence. Later that day, the Minor returned home and told police officers an adult male known to her as "Sam" picked her up at the Fourth Street Park in Northampton early that day. "Sam" then drove her to the Scottish Inn, located in Hanover Township, Lehigh County, where he sexually assaulted her in Room 109. On the same date, the Minor

---

[1] This summary of facts is based on the undisputed presentence report, ¶¶ 15-25.

submitted to a sexual assault examination at Lehigh Valley Hospital. The exam revealed the Minor had injuries consistent with sexual assault.

On March 13, 2017, the Minor was interviewed by a Child Interview Specialist at the Lehigh County Child Advocacy Center. The Minor stated that she met the individual known to her only as "Sam" via the website "Meet Me." They began communicating by means of the Internet applications "Skype" and "Snapchat."[2] "Sam" eventually persuaded the Minor to meet him in person. The Minor reported she had told "Sam" at some point during their communications that she was 11 years old.

The Minor reported that "Sam" picked her up  on March 4, 2017, from the Fourth Street Park in Northampton Borough around midday. "Sam" then drove her to the Red Roof Inn in Hanover Township, Lehigh County, where he rented a room while she waited in the car. "Sam" came back out and took her to the rented room where he began to kiss her and take her clothes off. "Sam" proceeded to put on a condom, place his penis in the

---

[2] MeetMe is an online social networking service that enables individuals to locate and communicate with other individuals. Skype is an instant messaging online application that provides real time video chatting service that enables users to see the individual they are communicating with via webcam. Snapchat is an instant messaging application on which videos and images can be shared with others. By design, communications, videos, and images shared via Snapchat are available for only a short period of time before being permanently deleted.

Minor's vagina, and have sexual intercourse with her. "Sam" then removed the condom and flushed it down the toilet. Eventually "Sam" drove her to the area of her house and dropped her off down the street.

The Minor further reported that a week later, on March 11, 2017, in mid-afternoon, "Sam" picked her up again from the Fourth Street Park. He drove her to the Scottish Inn in Hanover Township, Lehigh County, where he already had a room rented. They went to Room 109 where "Sam" proceeded to have vaginal intercourse with the Minor while wearing a condom. "Sam" finished and flushed the condom down the toilet. The Minor related that "Sam" waited for a few minutes before putting on another condom and having vaginal intercourse with her again. Once he was finished, he again flushed the condom down the toilet. The Minor reported that she looked at her phone and observed several missed calls and text messages from family members indicating that they were looking for her. This caused "Sam" to panic and he immediately drove her to the area of her house and dropped her off on the corner.

Pennsylvania State Police learned that Room 109 at the Scottish Inn was rented to Sandro G. Zhinin on March 11, 2017. At check-in, Zhinin presented his New York driver's license and a Capital One MasterCard debit card to rent the room.

The Pennsylvania State Police prepared a photo lineup, which contained pictures of eight individuals, one of them being Zhinin. A trooper showed the photo lineup to the Minor in the presence of her parents on March 13, 2017. The Minor positively identified Zhinin as the individual she knew as "Sam."

On March 13, 2017, the Pennsylvania State Police contacted the Red Roof Inn and learned that Zhinin rented a room on March 4, 2017, and checked out on March 5, 2017. Zhinin presented his New York driver's license to rent the room and paid for it with a Capital One MasterCard debit card.

On March 23, 2017, the Pennsylvania State Police executed a search warrant for records on Zhinin's Capital One checking account. The records revealed that Zhinin's debit card was used to make purchases at the Red Roof Inn on March 4, 2017, for $78.58 and the Scottish Inn on March 11, 2017, for $99.00. It listed Zhinin's home address as a location in Brooklyn, New York.

On March 25, 2017, Pennsylvania State Police, in cooperation with the Minor and her parents, posed as the Minor and initiated an electronic conversation with Zhinin. In that conversation, Zhinin made plans to travel once again to meet the Minor for sexual purposes. As with their earlier

meetings, Zhinin arranged to pick up the Minor at the Fourth Street Park in Northampton Borough. The meeting was planned for Saturday, March 25, 2017.

On that date, Pennsylvania State Police conducted surveillance of the park. At approximately 1:00 p.m., Zhinin was observed in the area of the park and was taken into custody. A search of Zhinin's person after his arrest revealed he was in possession of a hotel keycard for Room 239 at the Red Roof Inn in Hanover Township. Hotel staff verified that Zhinin had checked in to the room at approximately 12:30 p.m. that day.

The hotel room was subsequently searched pursuant to a search warrant, and a tablet computer belonging to Zhinin was located. A search of the tablet revealed sexually explicit images, including a 19-minute video of Zhinin having sex with the Minor on March 11, 2017.

### B.    Sentencing.

Zhinin was sentenced on February 1, 2019. Other than a request that the presentence report be changed to reflect that he was a United States citizen, Zhinin made no objections to the presentence report. App. 61-62.

As calculated in the presentence report, Zhinin's offense level was 43, the highest level possible under the Sentencing Guidelines. PSR ¶ 69. For each of his three counts of aggravated sexual assault of a minor, the base

offense level was 38. A two-level increase applied because the defendant used a computer in communicating with the victim, raising his offense level for each of the three counts to 40.[3] PSR ¶¶ 35-36, 41-42, 53-54. The two counts of production and possession of child pornography grouped with each other. The base offense level was 32. PSR ¶ 53. Zhinin received a four-level increase because the minor victim was under age 12, a two-level increase because the defendant had sexual contact with the victim during the production of the child pornography, a four-level increase because the defendant's engaging in sexual intercourse with the 11-year-old victim constituted sadistic conduct, and a two-level increase because the defendant used a computer in the commission of the offense. PSR ¶¶ 53-61. After application of the grouping rules under U.S.S.G. § 3D1.4, the defendant's adjusted offense level was 48. PSR ¶¶ 62-65. He received a three-level reduction for acceptance of responsibility. PSR ¶¶ 67-68. His total offense level was 45, but was reduced to 43, the highest level in the Sentencing Guidelines. PSR ¶ 69.

Zhinin had no criminal history. Accordingly, he was in criminal history category I. PSR ¶ 73. The Guidelines range for offense level 43 in

---

[3] Even if Zhinin had not used a computer, he would still have received a two-level enhancement under U.S.S.G. § 2A3.1(b)(6) because he misrepresented his age to the victim. PSR ¶ 36.

criminal history category I is life imprisonment. PSR ¶ 106. In response to the district court's inquiry, Zhinin's counsel stated that Zhinin had no objection to the guideline calculation and the recommended sentence. App. 63.

At sentencing, the district court confirmed that, in addition to the presentence report, the court had received and reviewed a sentencing memorandum from the government and a sentencing memorandum and supplemental sentencing memorandum from the defense. The district court reviewed letters submitted by the defense, including a letter from the defendant's mother, a chart prepared by the defense showing sentences imposed in some other cases involving child sexual exploitation, and the report of a psychological examination performed on the defendant by Dr. Frank M. Dattilio. App. 62-63.

In a sidebar conference, counsel for both parties stipulated that no force was used in the commission of the offense. Neither party requested that the court view the video. App. 65.

Zhinin's father, Manuel Zhinin, testified on behalf of the defendant, as did the defendant's brothers Eric Zhinin and Cristian Zhinin, his sister Jessica Zhinin, and his mother Maria Zhinin. App. 65-66. Each family member testified that Zhinin was of good character and that he was a

helpful and devoted family member. They stated that they continued to support him despite the present offense. App. 66-80.

The government presented the testimony of the victim and the victim's mother as victim impact statements. The victim's mother, identified only as "Rebecca," testified to the fear that she and her husband felt when they discovered that the victim was missing and to the damage that the defendant had caused to their family. App. 82. She told the court that because of the offense, the victim failed two years of school. App. 83. The victim's mother expressed her view that the defendant had not just made a mistake, but was a serial sexual predator who presented an ongoing risk of future criminal conduct, and who should be incarcerated for life. App. 82-86.

The victim, who was 12 years old at the time of sentencing, testified with the support of her sister. The victim told the court, "[m]y life has been horrible since he's done this, sometimes, people look at me differently. Family has treated me differently." App. 86. Addressing the defendant, she said:

> I'm scared to walk alone on the street even in daylight, because of what you did. My depression has gotten worse. My anxiety is more frequent.
>
> Sometimes, I'm scared to be in my own house, because I feel, like, somebody is going to break in and do what you did to me.

And I won't forget that day. I can't forget the hospital visit. For the first couple of weeks, I couldn't stop dreaming about that day. It got so bad, that I had to sleep on my sister's lap, so I would feel safe.

I'm glad you're going to jail, because it prevents other girls from getting hurt like me.

App. 87.

After hearing from counsel and the defendant, the district court stated that it had carefully considered all the information submitted, including the guilty plea agreement, the factual basis for the plea, and the sentencing memoranda and their attachments. App. 112. The court found that the Sentencing Guidelines called for a life sentence. App. 113. The court noted that it had "considered [Dr. Dattilio's] report carefully." *Id.* The court noted that the defendant had moved for a downward variance to the mandatory minimum sentence of 30 years' imprisonment. *Id.*

The district court discussed the defendant's disparity argument, noting the defense's chart of sentences imposed in other sex offense cases and recognizing that "it is incumbent on this Court to avoid sentencing disparities for similarly-situated defendants, who have committed similar conduct." App. 113.

The court found that the defendant had demonstrated remorse and had accepted responsibility. App. 114-15. The court stated that it would take

into account the 20- to 40-year state sentence imposed on the defendant for the same conduct as the instant case. App. 116.

In discussing the Section 3553(a) factors, the district court found that "the nature and circumstances of the offense are atrocious. They're serious, they're not impulsive, they're repeated." App. 118-19. The court recognized that the defendant's punishment must reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense. App. 119. The court found that "deterrence is especially important in here, it is incumbent on this Court to ensure that you do not ever commit an offense similar to this again. But also to send a message out that this is not acceptable conduct and it will be punished. And it is incumbent on me to protect the public from further crimes by you." *Id.* The court found no need for any educational or vocational training, but found that sex offender treatment was necessary. *Id.* The court considered the kinds of sentences that were available, the Sentencing Guidelines range, and the pertinent policy statements in the guidelines, especially as they relate to these particular offenses. App. 119-20.

The district court addressed the defendant:

> Sir, after considering all of that and all of the factors set forth in Section 3553(a), both the positive as well as the negative and after considering the fact that I do believe there is an unmitigable evilness within you and that you are likely to commit another offense, if you

are released from jail and recognizing that you only have one life, I do find that you are a deviant, sexual predator and that you do pose a danger to the community and will continue to pose a danger to the community. And accordingly, sir, I am going to sentence you to life imprisonment.

App. 120.

After imposing sentence, the district court asked counsel if there were any further issues to be addressed. Defense counsel stated, "under the United States versus Laura Medea (ph),[4] we are lodging an objection to this Court's imposition of the sentence and argue that it has not considered the arguments of defense counsel, both in the pleadings and here in court today." App. 125.

---

[4] Referring to *United States v. Flores-Mejia,* 759 F.3d 253 (3d Cir. 2014) (en banc).

## STATEMENT OF RELATED CASES

In *Commonwealth v. Sandro G. Zhinin*, in the Lehigh County Court of Common Pleas, No. 39-CR-0002272-2017, the defendant was convicted of state offenses arising from the conduct at issue in this case.

The government is not aware of any other related case or proceeding that is completed, pending, or about to be presented before this Court or any other court or agency, state or federal.

## SUMMARY OF ARGUMENT

1. Because Zhinin failed to specify the grounds for his objection at sentencing, his claims are reviewable only for plain error. Zhinin's sentence was not procedurally unreasonable. The sentencing court considered Zhinin's argument that a life sentence would create an unwarranted disparity with sentences imposed on similarly situated defendants, and was not required to provide a more detailed explanation. Zhinin did not identify any factually similar cases in which defendants received lower sentences, whereas there are numerous cases in which defendants received life sentences for conduct similar to Zhinin's crimes.

Zhinin's complaint that the district court did not adequately address the psychologist's report is also unavailing. The district court noted that it had read and considered the report, which is sufficient. The report did not warrant further discussion, because it was based on Zhinin's admittedly false statement that he believed that the victim was at least 18.

The district court did not plainly err in concluding that Zhinin presented a probability of recidivism. The court's conclusion was soundly based in the facts of the case. The court's characterization of Zhinin's impetus to sexually abuse young children as "evil" did not render the sentence procedurally unreasonable.

2. Zhinin's within-Guidelines sentence was substantively reasonable. As discussed above, the sentence was not procedurally unreasonable. Zhinin failed to show that no reasonable court would have imposed the same sentence.

# ARGUMENT

## I. THE DISTRICT COURT DID NOT COMMIT PROCEDURAL ERROR AT SENTENCING

### Standard of Review

As explained below, Zhinin's claims that the district court committed procedural error are reviewed for plain error, as he failed to make a meaningful objection at the sentencing proceeding.[5] *United States v. Flores-Mejia*, 759 F.3d 253, 255 (3d Cir. 2014) (en banc).

It is the defendant's burden to establish plain error. *United States v. Olano*, 507 U.S. 725, 734-35 (1993). To do so, he must prove that (1) the court erred; (2) the error was obvious under the law at the time of review; and (3) the error affected substantial rights, that is, the error affected the outcome of the proceedings. *Johnson v. United States*, 520 U.S. 461, 467 (1997). If all three elements are established, the Court may, but need not, exercise its discretion to award relief. *Id.* That discretion should be exercised only in cases where the defendant is "actually innocent" or the

---

[5] Had Zhinin properly preserved the issues he now raises, this Court would review the sentence for procedural reasonableness under an abuse of discretion standard. *Gall v. United States*, 552 U.S. 38, 46 (2007); *United States v. Booker*, 543 U.S. 220, 261 (2005). In such review, the burden rests on the party challenging the sentence to show unreasonableness, and this Court gives due deference to the district court's judgment. *United States v. Cooper*, 437 F.3d 324, 330 (3d Cir. 2006).

error "'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Olano*, 507 U.S. at 736, *quoting United States v. Atkinson*, 297 U.S. 157, 160 (1936). The "plain-error exception to the contemporaneous-objection rule is to be 'used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.'" *United States v. Young*, 470 U.S. 1, 15 (1985), *quoting United States v. Frady*, 456 U.S. 152, 163 n.14 (1982).

## Discussion

Defendant/appellant Sandro Zhinin asserts that the sentence was procedurally unreasonable for three reasons: (1) the district court allegedly failed to respond to Zhinin's disparity argument or to find that Zhinin's sentence did not created an unwarranted disparity; (2) the district court allegedly failed to respond to the psychologist's report; and (3) the district court allegedly based the sentence on "unsubstantiated speculation regarding recidivism." Br. 25, 43. Zhinin admits that he did not object to the district court's finding that Zhinin was likely to reoffend, and that therefore the claim is reviewed only for plain error. Despite his claim to the contrary, Zhinin did not preserve the other two issues for appeal. They are

likewise reviewable only for plain error. Under any standard of review, however, Zhinin's challenges to his sentence are meritless.

### A.    Zhinin Did Not Preserve his Claims of Procedural Error.

Zhinin claims that he preserved his first two claims of procedural error "by objecting after the imposition of sentence to the district court's failure to meaningfully consider Mr. Zhinin's arguments in mitigation." Br. 3. After the district court imposed sentence, defense counsel said, "under [*United States v. Flores-Mejia*], we are lodging an objection to this Court's imposition of the sentence and argue that it has not considered the arguments of defense counsel, both in the pleadings and here in court today." App. 125. Defense counsel's objection did not identify which arguments the district court had allegedly failed to consider, nor did counsel inform the court of the defense's belief that the court was required to explain why it found each of the defense's arguments unpersuasive. The defense's vague, general objection did not preserve the issues for appeal.

A party preserves a claim of error "by informing the court – when the court ruling or order is made or sought – of the action the party wishes the court to take, or the party's objection to the court's action and the grounds for that objection." Fed. R. Crim. P. 51(b). As the Supreme Court succinctly observed, "[i]f a litigant believes that an error has occurred (to his

detriment) during a federal judicial proceeding, he must object in order to preserve the issue." *Puckett v. United States*, 556 U.S. 129, 134 (2009). "If an error is not properly preserved, appellate-court authority to remedy the error (by reversing the judgment, for example, or ordering a new trial) is strictly circumscribed. There is good reason for this; 'anyone familiar with the work of courts understands that errors are a constant in the trial process, that most do not much matter, and that a reflexive inclination by appellate courts to reverse because of unpreserved error would be fatal.'" *Id.*, quoting *United States v. Padilla*, 415 F.3d 211, 224 (1st Cir. 2005) (en banc) (Boudin, C.J., concurring).

Zhinin alleges that the district court failed adequately to address two arguments: first, his argument that a life sentence would create an unwarranted disparity with sentences imposed on similar defendants, and second, his argument that the psychologist's report showed that he was unlikely to reoffend. With regard to the first argument, Zhinin further argues that the district court committed procedural error when it "failed . . . to find that Mr. Zhinin's life sentence did not create an unwarranted disparity" with a list of defendants compiled by defense counsel. Br. 3.

Defense counsel was present when the district court explained the matters it had considered and its reasons for imposing sentence. Had

defense counsel actually felt that the district court's explanation of either the disparity issue or the psychologist's report was inadequate, counsel could have made a specific objection, informing the district court of the areas in which the defense believed the district court's explanation had fallen short. The court could then have provided additional explanation if the court considered it necessary, solving the (alleged) problem and eliminating the need for the expenditure of appellate resources.

It is obvious, however, that defense counsel's goal was not obtaining a fuller explanation of the district court's reasoning. Rather, the token objection offered by defense counsel was an attempt to present the appearance of complying with *Flores-Mejia,* and thus to obtain in depth review of whatever issues defense counsel might later decide to raise on appeal, without actually alerting the district court to any deficiencies in the sentencing proceeding.[6]

---

[6] This action, we believe, is grounded in developments in other cases. This office has complained in recent years about numerous cases in which attorneys in the Defender Association have stated no procedural objection at sentencing, and then sought a remand on appeal on the basis of purported procedural error. It recently appears that, in response to this criticism, counsel with the Defender Association have adopted a practice of standing up at the end of a sentencing hearing, having no particular objection to present, and simply stating words to the effect of, "I object on the basis of *Flores-Mejia* to the court's explanation of the sentence," as if that will somehow give appellate counsel free rein to present objections on appeal. This is unavailing, under Rule 51(b).

The en banc Court in *Flores-Mejia* explained that one of the reasons for requiring a timely procedural objection is to prevent "'sandbagging' of the court by a defendant who remains silent about his objection to the explanation of the sentence, only to belatedly raise the error on appeal if the case does not conclude in his favor." *Flores-Mejia*, 759 F.3d at 257. Granting relief to Zhinin in this case would allow exactly that kind of "sandbagging." To complain now that the district court provided inadequate explanations, without having informed the court of the supposed deficiencies, is completely counter to *Flores-Mejia*'s goal of giving the sentencing court the chance to address any alleged procedural errors at a time when they could be corrected or explained. Such a result would also entirely defeat the related goal of "judicial economy" that animated the *Flores-Mejia* decision. *See id.* at 258 ("Our strong interest in judicial economy, heightened in these times of fiscal restraint and judicial budgetary concerns, weighs heavily in favor of a rule under which the defendant must contemporaneously object to concerns regarding the procedural reasonableness of a sentence").

Zhinin's blanket objection at sentencing did not "inform[] the court . . . of the action" Zhinin wanted the court to take, or of Zhinin's "objection to the court's action and the grounds for that objection." Fed. R. Crim.

P. 51(b). It was therefore inadequate to preserve any objections to the matters that Zhinin raises on appeal. Accordingly, all of Zhinin's arguments that the district court committed procedural error at sentencing are reviewable only for plain error.

### B.    Zhinin's Contentions That the District Court Did Not Adequately Address His Disparity Argument or the Psychologist's Report Are Meritless.

Following the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), this Court has directed district courts to follow a three-step sentencing process. *See United States v. Fisher*, 502 F.3d 293, 307-08 (3d Cir. 2007). In the first step, "'[c]ourts must continue to calculate a defendant's Guidelines sentence precisely as they would have before *Booker*.'" *Id.* at 308, quoting *United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006).

In the second step of the analysis, the courts must formally rule on departure motions, taking into account pre-*Booker* case law. *Fisher*, 502 F.3d at 308. Finally, at the third step of the analysis, courts must engage in a "true, considered exercise of discretion . . . including a recognition of, and response to, the parties' non-frivolous arguments" and consideration of the 18 U.S.C. § 3553(a) factors. *United States v. Jackson*, 467 F.3d 834, 841 (3d Cir. 2006). A sentencing judge is required to "set forth enough to satisfy the

appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decision making authority." *United States v. Lessner*, 498 F.3d 185, 203 (3d Cir. 2007), quoting *Rita v. United States*, 551 U.S. 338, 356 (2007). In this regard, a court need not make findings as to each Section 3553(a) factor if the record otherwise makes clear that the court took the factors into account. *Lessner*, 498 F.3d at 203, citing *Cooper*, 437 F.3d at 329.

District courts need not discuss arguments that are clearly lacking in merit, *Cooper*, 437 F.3d at 329, or provide a complete and comprehensive explanation of sentencing law, *United States v. Dragon*, 471 F.3d 501 (3d Cir. 2006). A "brief" discussion is satisfactory, especially in those cases in which the district court "apparently determined that defendant's arguments were simply insufficient to warrant a below-Guidelines sentence." *United States v. Olfano*, 503 F.3d 240, 245 (3d Cir. 2007); *see also Rita*, 551 U.S. at 357-59; *Jackson*, 467 F.3d at 842; *Cooper*, 437 F.3d at 330 n.9 ("These often spontaneous remarks are addressed primarily to the case at hand and are unlikely to be a perfect or complete statement of all of the surrounding law.").

The sentence in this case was procedurally sound. As Zhinin concedes, the district court correctly calculated the guideline range. There

were no departure motions. The district court considered Zhinin's arguments for a downward variance. Finally, the district court considered the factors under Section 3553(a). Zhinin's contentions that the district court failed to give appropriate consideration to any of Zhinin's arguments, or to explain the court's decisions, are meritless.

At sentencing, the district court stated that it had carefully considered all the information submitted, including the guilty plea agreement, the factual basis for the plea, and the sentencing memoranda and their attachments. App. 112. The court observed that the defendant's adjusted offense level was 43 and his criminal history category was I, resulting in a guideline sentencing range of life. App. 113. The court stated that "in reviewing the exhibits, there was, of course, Dr. Dattilio's report and I've considered that report carefully." *Id.* The court noted that the defendant had moved for a downward variance to the mandatory minimum sentence of 30 years' imprisonment. *Id.*

The district court discussed the defendant's disparity argument, noting the chart of sentences imposed in other sex offense cases and stating, "the argument of the defense is that, when comparing this offense to those offenses, many appear – and, of course, we don't know the details – but many appear to be similar or in fact, much more serious and they did

not result in life sentences. And the argument according – of course – being that it is incumbent on this Court to avoid sentencing disparities for similarly-situated defendants, who have committed similar conduct." App. 113.

The district court also noted the defense's argument that even with a sentence of 30 years, the defendant would be very close to his expected life expectancy when released. App. 113-14. The court found that the defendant had demonstrated remorse and had accepted responsibility. App. 114-15. The court recognized the defendant's argument that the enhancement for use of a computer inflates the guideline offense level calculation, but found that the enhancement properly applied in this case because the defendant used the computer to gain access to the victim and used the computer to make a video of his sexual contact with the victim. App. 115. The court stated that it was "much more impressed with the [defendant's] argument that the recording is in the control of the Government, that it will not go out on the Internet, that it will not be seen by anyone else." App. 116. The court stated that it would take into account the 20- to 40-year state sentence imposed on the defendant for the same conduct as the instant case. *Id.*

In discussing the instant offense, the district court stated:

> The defendant has – was before these offenses – was a seemingly well-adjusted, beloved family member, he was legitimately

employed, had a good job. He was well educated. He had no drug or alcohol issues and he had no identified mental-health issues.

And yet, this same individual at the age of thirty-three starts communicating with an eleven-year-old, fifth-grade elementary-school student and lures her in to a sexual relationship.

And he does it, not just once where he goes to a park to pick her up and takes her to a hotel, but then, after succeeding the first time and returning back across state lines to New York, does it again and of course, this time, not only does it, but then films it.

By then, there can be no doubt he knows of this child's emotional age as well as her physical age and does it again.

So, to the extent it was impulsive, he's had time to reflect on what he's done and the evilness of it and the wrongfulness of it and the criminality of it, despite having the opportunity to reflect on that and to consider what he has done and to consider what he is risking – what he is risking, including his family, including his job, including the life he knew, the life that he had earned, despite that, he does it a second time.

And then after reflecting again and having an opportunity to reflect as to what he is risking as well, hopefully, as to what he is doing to this child and what he is doing to this child's family and what he is doing to his own family, he does it a third time and he returns back a third time.

This is not a mistake and this is not simply misconduct, it is – as I said – this is evilness. There is an evilness that lurks within you, sir, it's an evilness that you could not control. And you could not control it the first time, you did this, you could not control it, the second time you did this and you could not control it, the third time you attempted to do it. Yet everything else about your life belies this evilness – everything. Including your demeanor at the time of the guilty-plea hearing, where you demonstrate the character that your family describes, your demeanor at the last hearing, where you demonstrate, the character that your family describes and even here

today, sir. And in your statement and allocution, you've demonstrated that character, yet again.

So, the – it's almost irreconcilable, what you have done to this child, what you've done in violation of our laws and what you've done to this child's family and everything else about your life.

App. 116-18.

In discussing the Section 3553(a) factors, the district court found that "the nature and circumstances of the offense are atrocious. They're serious, they're not impulsive, they're repeated." App. 118-19. The court recognized that the defendant's punishment must reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense. App. 119. The court found that "deterrence is especially important in here, it is incumbent on this Court to ensure that you do not ever commit an offense similar to this again. But also to send a message out that this is not acceptable conduct and it will be punished. And it is incumbent on me to protect the public from further crimes by you." *Id.* The court found no need for any educational or vocational training, but found that sex offender treatment was necessary. *Id.* The court considered the kinds of sentences that were available, the Sentencing Guidelines range, and the pertinent policy statements in the guidelines, especially as they related to these particular offenses. App. 119-20.

The district court addressed the defendant:

Sir, after considering all of that and all of the factors set forth in Section 3553(a), both the positive as well as the negative and after considering the fact that I do believe there is an unmitigable evilness within you and that you are likely to commit another offense, if you are released from jail and recognizing that you only have one life, I do find that you are a deviant, sexual predator and that you do pose a danger to the community and will continue to pose a danger to the community. And accordingly, sir, I am going to sentence you to life imprisonment.

App. 120.

Despite this record, Zhinin claims that the court failed to meaningfully address his argument that a life sentence would create an unwarranted disparity with sentences imposed on other defendants, and his argument that he presented a low risk of recidivism, based on the psychologist's report.

First, it must be stressed that the law does not require anywhere near the detail in explanation that Zhinin suggests, and in fact requires much less than the court provided here. Most fundamentally, the Supreme Court has made clear that, where it is apparent that the district court heard the defendant's arguments in mitigation, the court is not required to give any particular explanation of its decision to reject those arguments and impose a within-guideline range sentence.

*Rita v. United States*, 551 U.S. 338 (2007), is controlling. In *Rita*, the defendant sought a reduction below the 33-to-41 month advisory guideline

range on the basis of three factors: his health, fear of retaliation in prison, and his military record. In response, the court simply said that the guideline range was "appropriate," and that a sentence outside the guideline range would be "inappropriate." It never discussed or commented on the specific grounds for leniency advanced by the defendant. The Supreme Court stated that "[t]he sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Id.* at 356. In the case before it, the Court held: "given the straightforward, conceptually simple arguments before the judge, the judge's statement of reasons here, though brief, was legally sufficient." *Id.*

The Court recognized that courts will often say more, and that is a salutary practice: "Where the defendant or prosecutor presents nonfrivolous reasons for imposing a different sentence, however, the judge will normally go further and explain why he has rejected those arguments. Sometimes the circumstances will call for a brief explanation; sometimes they will call for a lengthier explanation. Where the judge imposes a sentence outside the Guidelines, the judge will explain why he has done so." *Id.* at 357. Moreover, the Court observed, "By articulating reasons, even if brief, the sentencing judge not only assures reviewing courts (and the

public) that the sentencing process is a reasoned process but also helps that process evolve. The sentencing judge has access to, and greater familiarity with, the individual case and the individual defendant before him than the Commission or the appeals court. That being so, his reasoned sentencing judgment, resting upon an effort to filter the Guidelines' general advice through § 3553(a)'s list of factors, can provide relevant information to both the court of appeals and ultimately the Sentencing Commission. The reasoned responses of these latter institutions to the sentencing judge's explanation should help the Guidelines constructively evolve over time, as both Congress and the Commission foresaw." *Id.* at 357-58.

But returning to the case before it, the Supreme Court concluded that the sentencing court's explanation (or lack thereof) was sufficient:

> The record makes clear that the sentencing judge listened to each argument. The judge considered the supporting evidence. The judge was fully aware of defendant's various physical ailments and imposed a sentence that takes them into account. The judge understood that Rita had previously worked in the immigration service where he had been involved in detecting criminal offenses. And he considered Rita's lengthy military service, including over 25 years of service, both on active duty and in the Reserve, and Rita's receipt of 35 medals, awards, and nominations.
>
> The judge then simply found these circumstances insufficient to warrant a sentence lower than the Guidelines range of 33 to 45 months. *Id.*, at 87. He said that this range was not "inappropriate." (This, of course, is not the legal standard for imposition of sentence, but taken in context it is plain that the judge so understood.) He immediately added that he found that the 33-month sentence at the

bottom of the Guidelines range was "appropriate." *Ibid.* He must have believed that there was not much more to say.

We acknowledge that the judge might have said more. He might have added explicitly that he had heard and considered the evidence and argument; that (as no one before him denied) he thought the Commission in the Guidelines had determined a sentence that was proper in the mine run of roughly similar perjury cases; and that he found that Rita's personal circumstances here were simply not different enough to warrant a different sentence. But context and the record make clear that this, or similar, reasoning underlies the judge's conclusion. Where a matter is as conceptually simple as in the case at hand and the record makes clear that the sentencing judge considered the evidence and arguments, we do not believe the law requires the judge to write more extensively.

*Rita*, 551 U.S. at 358-59.

*Id.* at 358-59. The Court further observed:

The appropriateness of brevity or length, conciseness or detail, when to write, what to say, depends upon circumstances. Sometimes a judicial opinion responds to every argument; sometimes it does not; sometimes a judge simply writes the word "granted" or "denied" on the face of a motion while relying upon context and the parties' prior arguments to make the reasons clear. The law leaves much, in this respect, to the judge's own professional judgment.

*Id.* at 356.

Notwithstanding this clear ruling, the Defender Association in this district continues to present appeal after appeal, without any success, challenging courts' explanations of within-guideline range terms. But if any possible doubt remained following *Rita* regarding the Supreme Court's

view, the Supreme Court surely interred it in *Chavez-Meza v. United States*, 138 S. Ct. 1959 (2018).

*Chavez-Meza* concerned the explanation a court must give when denying in whole or in part a motion under 18 U.S.C. § 3582(c)(2) for reduction of sentence based on a retroactive guideline amendment. In that case, the sentencing court provided no explanation at all of its decision to reduce a sentence, but not to reduce it as low as the guideline amendment permitted. Instead, the court completed a preprinted and nationally circulated form, AO-247, which included form language that the judge had "considered" the defendant's "motion" and had "tak[en] into account" the 3553(a) factors and the relevant Guidelines policy statement. The defendant challenged this statement as inadequate.

Before the Supreme Court, the government argued that, whatever the requirement for explanation of an initial sentence, the district court was not required to give any explanation at all of its ruling on a 3582(c)(2) motion. The Supreme Court determined that it was not necessary to resolve that issue; it held that even if the same requirements apply to resolution of a 3582(c)(2) motion as apply at an original sentencing proceeding, the use of the preprinted form sufficed. The Court stated that "given the simplicity of this case, the judge's awareness of the arguments, his consideration of the

relevant sentencing factors, and the intuitive reason why he picked a sentence above the very bottom of the new range, the judge's explanation (minimal as it was) fell within the scope of the lawful professional judgment that the law confers upon the sentencing judge." *Chavez-Meza*, 138 S. Ct. at 1967-68.

In claiming that the court here had some greater obligation, Zhinin includes an inaccurate discussion of *Rita,* presenting that case as if it required effusive explanations of every sentencing issue and completely omitting the Court's statements that the appropriateness of a court's explanation depends entirely on the circumstances of the case. Br. 30. *Rita*'s holding refutes Zhinin's characterization of *Rita* as requiring lengthy discussion. Zhinin also ignores *Chavez-Meza* completely, and relies on earlier Third Circuit decisions to the exclusion of the Supreme Court's controlling view. In any event, those Third Circuit decisions do not conflict with the controlling precedent.[7]

---

[7] As noted, the briefing presented by the Defender Association in multiple cases of this nature, over the years, has reflected a consistent insistence on ignoring the holding of the Supreme Court in *Rita* and, more recently, *Chavez-Meza*, as if these Supreme Court cases were never decided and decisions of this Court in different circumstances somehow take precedence. The current brief takes this manifested ignorance to a new level, as through selective editing of the Court's statements in *Rita*, *see* Br. 30, counsel presents that case as requiring exactly the opposite of what the Supreme Court declared. Thus, the Supreme Court's sentence – "Where the

*United States v. Merced*, 603 F.3d 203, 216 (3d Cir. 2010), and

*United States v. Ausburn*, 502 F.3d 313, 328-31 (3d Cir. 2007), involved

sentences outside the pertinent guideline ranges, to which a more rigorous

explanation requirement applies.[8] In *United States v. Begin*, 696 F.3d 405,

414 (3d Cir. 2012), and *United States v. Friedman*, 658 F.3d 342, 363 (3d

Cir. 2011), each district court did not make a record that it even considered

the variance requests at issue. That was also true in *Flores-Mejia*, where,

---

defendant or prosecutor presents nonfrivolous reasons for imposing a
different sentence, however, the judge will normally go further and explain
why he has rejected those arguments," 551 U.S. at 357 – turned into this in
the appellant's brief, at page 30:

> As the Supreme Court put it in *Rita*, "[w]here the defendants or
> prosecutor presents non-frivolous reasons for imposing a different
> sentence," the sentencing judge should "explain why he has rejected
> those arguments." 551 U.S. at 356-57 . . . .

We appreciate that the sentence imposed in this case is unquestionably
harsh, and might not be imposed by all reasonable sentencing judges. We
further recognize counsel's obligation to bring all of their skill and passion
to bear in seeking to reverse it. But none of that justifies disregard and
outright alteration of the Supreme Court's pertinent jurisprudence.

[8] *Ausburn* itself found *Rita* not controlling because the sentence in
*Ausburn* was outside the guideline range, *see* 502 F.3d at 330-31, and
panels of this Court have recognized that the application of *Ausburn* is
accordingly limited, *see, e.g., United States v. Morice*, 376 F. App'x 169,
171-72 (3d Cir. 2010) (not precedential) ("She cites several cases in which
we directed remand to the sentencing court because of what we deemed to
be inadequate justification. Those cases either predate the Supreme Court's
relevant decisions or involve sentences imposed outside the guidelines
range," citing *Ausburn*).

after the defendant made a mitigating argument regarding cooperation, the court merely stated, "Ok, thanks. Anything else?" This Court found even that to present a "close issue," but determined that the record was not sufficient to reflect that meaningful consideration was given to Flores-Mejia's cooperation argument. The present case is completely different, where the court expressly stated that it heard and considered the defendant's arguments.

Zhinin particularly relies on *United States v. Olhovsky*, 562 F.3d 530 (3d Cir. 2009). In *Olhovsky*, this Court found that a six-year sentence for possession of child pornography was procedurally and substantively unreasonable. *Olhovsky* is easily distinguishable, both factually and procedurally. Olhovsky was an 18-year-old collector of child pornography, and much of his involvement with child pornography took place while he was a juvenile. *Id.* at 539 n.6. The *Olhovsky* Court found that the district court committed procedural error by denying the defense's request to subpoena the defendant's treating psychiatrist to testify at the hearing. *Id.* at 544. The Court found that this was error because the district court ultimately based its sentence on concerns about public safety, the possibility of recidivism, and whether the defendant could be "a pedophile monster," which were all issues that the treating psychologist could have

addressed. *Id.* at 544-45. Moreover, the district court ignored detailed evidence from multiple mental health professionals who had concluded that the defendant had already progressed substantially in his treatment. Instead, the court stated inaccurately that "*prior efforts have largely failed.*" *Id.* at 542-43 (emphasis in original); *see also id.* at 547-48. The court also ignored the evidence that a lengthy prison sentence would impair Olhovsky's chances for continuing to adjust socially. *Id.* at 550-51.

Overall, the *Olhovsky* Court found that the district court appeared to ignore the offender and focused solely on what it considered to be the "insidious nature of child pornography, the difficulty of catching offenders, and the need for 'substantial, indeed, potentially draconian punishment.'" *Id.* at 549, 551. The Court concluded that "where, as here, the record strongly suggests that some of the statutorily prescribed sentencing factors were ignored, we cannot conclude that the resulting sentence was reasonable." *Id.* at 547.

None of these errors occurred in this case. Here, the court did not deny a subpoena for the defendant's treating psychologist,[9] but considered a report prepared by Dr. Dattilio, and listened to extensive argument about

---

[9] If Zhinin had a treating psychologist, he did not seek to have that individual testify at sentencing.

Zhinin's history and character. It is clear that the court here considered the person who stood before it, balancing Zhinin's positive history and characteristics against the undeniable facts that he had sought out, seduced, and violated an eleven-year-old child, returning again and again to repeat his offense.

This Court has consistently limited *Olhovsky*'s holding to the unusual constellation of circumstances and procedural errors in that case. *See, e.g., United States v. Zabielski*, 711 F.3d 381, 390-91 (3d Cir. 2013) (distinguishing *Olhovsky* as a "case[] [that] involved child pornograpy" in which "the sentencing judge['s] beliefs about recidivism, though not supported by evidence in the record, were central to the judge['s] reasoning"); *United States v. King*, 604 F.3d 125, 146 (3d Cir. 2010) (distinguishing *Olhovsky* because the district court committed no procedural error and its description of King's conduct was not erroneous); *see also United States v. Passalaqua*, 508 F. App'x 141, 144 (3d Cir. 2013) (not precedential) ("the District Court did not fail to consider Passalaqua's arguments as the court did in *United States v. Olhovsky*"); *United States v. Sanders*, 409 F. App'x 555, 558 (3d Cir. 2010) (not precedential) (distinguishing *Olhovsky* where "the District Court did not commit any procedural errors" at sentencing); *United States v. Ross*, 383 F. App'x 247,

249-50 (3d Cir. 2010) (not precedential) ("our decision in *Olhovsky* does not compel a different result in this case because a thorough review of the record reveals the District Court performed the requisite consideration of the sentencing factors and does not suggest the court ignored or overemphasized any factors").

In short, the Supreme Court's controlling view is fully applicable here: where the record makes clear that the district court heard the defendant's arguments and did not commit any other procedural errors, the court is not required to say anything in particular upon denying a defendant's variance request and instead imposing a within-guideline sentence. Indeed, the court elected to say more than the Supreme Court requires.

### 1.    Zhinin's disparity argument did not merit more extensive discussion.

Zhinin contends that the district court failed to explain why the imposition of a life sentence on Zhinin did not cause an unwarranted disparity with the sentences imposed on other defendants in similar cases.

Section 3553(a)(6) requires the court to give meaningful consideration to the risk of sentencing disparities among similarly situated individuals. *United States v. Negroni*, 638 F.3d 434, 446 (3d Cir. 2011). The defendant bears the burden of demonstrating that he and another defendant who received a lower sentence were similar "in terms of the

extent of the crime, charges, prior history, and jurisdiction." *United States v. Underwood*, 507 F. App'x 223, 227 (3d Cir. 2012) (not precedential), *quoting United States v. Robinson*, 603 F.3d 230, 234-35 (3d Cir. 2010). A defendant must show that "his circumstances 'exactly paralleled' those of the defendants who received a lower sentence." *United States v. Bannout*, 509 F. App'x 169, 172 (3d Cir. 2013) (not precedential), *quoting United States v. Iglesias*, 535 F.3d 150, 161 n.7 (3d Cir. 2008). It is not enough to provide generalized information regarding other defendants who received lower sentences. To make out a colorable disparity argument, the defendant must point to other defendants who committed crimes similar to his, yet received significantly different sentences. *See Underwood*, 507 F. App'x at 227-28.

Zhinin's disparity argument lacked the factual underpinnings required for a colorable disparity argument. Zhinin relied on a chart attached to the defendant's Supplemental Sentencing Memorandum, App. 164-84, which defense counsel described as "just a sample, of some cases that we found in the Eastern District of Pennsylvania with other often hands-on, sex-abuse crimes of minors" in which the defendants did not receive life sentences. App. 105. Defense counsel acknowledged that "every case is out of the norm, it's really hard to find two similar cases with a

similarly-situated defendant with similar conduct, especially, in these child-abuse and sex cases" and that, of the defendants listed in the attached chart, "[s]ome received less than [Zhinin]'s facing, because the charges were different. Some received much more." App. 105-06. Defense counsel did not point to any of the cases on the chart as strongly resembling Zhinin's case and thus supporting a disparity argument.

Zhinin's chart was, in fact, a poor foundation for a disparity claim in this case. Many of the listed cases concerned the production of sexually explicit images of minors, either through hidden cameras or persuasion of the minor to take images of himself or herself, and did not involve any sexual contact between the defendant and the minor. Some of the listed cases involved Internet solicitations of "minors" who proved to be undercover law enforcement officers. While these offenses are serious, they are not sufficiently similar to Zhinin's crimes to support a colorable disparity argument.

In the cases on the chart in which there was actual sexual contact between the defendant and the minor, the defendants received severe penalties, including terms of imprisonment that would likely have exceeded their life spans. For example, Zhinin's chart shows that defendant "L.J." was sentenced to 1,200 months' imprisonment. Defendant "S.M." was

sentenced to 720 months' imprisonment, the statutory maximum penalty in his case. App. 172, 176. "D.E.," whom the defendant erroneously identifies as having been sentenced to 600 months' imprisonment, actually received a sentence of 840 months' imprisonment. App. 168. This Court affirmed that sentence, stating "we have no difficulty in concluding that" the 840-month sentence for sexual exploitation of children and possession of child pornography was substantively reasonable. *United States v. Eyster,* 386 F. App'x 180, 183 (3d Cir. 2010) (not precedential).[10]

The defense's chart is by no means comprehensive, even of cases in the Eastern District of Pennsylvania. For example, the chart includes "C.J.," that is, Concetta Jackson, who was sentenced to 300 months' imprisonment, App. 172, but omits Jackson's co-defendant John Worman, who was the principal wrongdoer and was sentenced to 120 years' imprisonment. *See United States v. Prawdzik*, 484 F. App'x 717, 720 (3d Cir. 2012) (affirming Worman's conviction). Had the defense expanded its view beyond the nine counties of the Eastern District, it would have become

---

[10] The chart also omits significant information. For example, the chart records that defendant "J.D." (John Graham Disney) was sentenced to 300 months' imprisonment, without mentioning that Disney was 60 years old at the time of sentencing, or that Disney's victim was 17 years old. *See* No. 12-287 (E.D. Pa.). Disney passed away while his appeal was pending, in No. 13-3194, and the matter was therefore abated.

apparent that life sentences for offenses like Zhinin's are by no means unprecedented. *See, e.g., United States v. Stull*, 760 F. App'x 109 (3d Cir. 2019) (not precedential) (338 years' imprisonment for producing, distributing, and possessing child pornography); *United States v. Mazer*, 604 F. App'x 126 (3d Cir. 2015) (not precedential) (720 months' imprisonment for two counts of production of child pornography); *United States v. Walpole*, 543 F. App'x 224 (3d Cir. 2013) (not precedential) (50 years' imprisonment for sexual exploitation of a child and receipt and possession of child pornography); *United States v. Pavulak,* 700 F.3d 651 (3d Cir. 2012) (life imprisonment for soliciting woman to provide minor child for sexual contact). *See also United States v. Davenport*, 910 F.3d 1076 (8th Cir. 2018) (840 months' imprisonment for sexual exploitation of a child and production of child pornography); *United States v. Arsenault*, 833 F.3d 24 (1st Cir. 2016) (780 months' imprisonment for sexually exploiting three minors, and transporting, receiving, and possessing child pornography); *United States v. Resnick,* 823 F.3d 888 (7th Cir. 2016) (life imprisonment for aggravated sexual abuse of a minor and interstate transportation of child pornography); *Sealed Appellee v. Sealed Appellant*, 825 F.3d 247 (5th Cir 2016) (life imprisonment for transporting a minor under the age of 12 years across state lines and engaging in a sexual activity

with her); *United States v. Goodale*, 738 F.3d 917 (8th Cir. 2013) (life imprisonment for crossing state lines to engage in sexual conduct with minors under age 12); *United States v. Jansen*, 431 F. App'x 51 (2d Cir. 2011) (life imprisonment for conspiracy to transport minors in interstate commerce with intent to engage in sexual activity and aiding and abetting); *United States v. Jass*, 331 F. App'x 850 (2d Cir. 2009) (115 years' imprisonment for transporting minor across state lines for purpose of engaging in illegal sexual activity and production of child pornography); *United States v. Carey*, 589 F.3d 187 (5th Cir. 2009) (life imprisonment for aggravated sexual abuse of a minor younger than the age of 12); *United States v. Cerno*, 529 F.3d 926 (10th Cir. 2008) (life imprisonment for aggravated sexual abuse of a child); *United States v. Puente*, 267 F. App'x 863 (11th Cir. 2008) (life imprisonment for aggravated sexual abuse of a child); *United States v. Hood*, 143 F. App'x 94 (10th Cir. 2005) (life imprisonment for kidnaping and aggravated sexual abuse of a child); *United States v. Brown*, 330 F.3d 1073 (8th Cir. 2003) (life imprisonment for kidnaping and aggravated sexual abuse of a child); *United States v. Scott*, 985 F.2d 576 (9th Cir. 1993) (unpublished disposition) (life imprisonment for aggravated sexual abuse of a child under the age of 12).

In sum, Zhinin's half-hearted disparity argument was not a "colorable argument" requiring serious consideration. Nonetheless, the district court did consider it and acknowledged the court's responsibility to avoid unwarranted disparities in sentencing among similarly situated defendants. Zhinin has failed to show that the district court committed error, much less plain error, in its handling of that argument.

> ### 2.    In the circumstances of this case, the district court was not required to explain why it was unpersuaded by Dr. Dattilio's report.

Zhinin's argument regarding the psychologist's report fares no better. As observed by government counsel at sentencing, Dr. Dattilio's report is fundamentally flawed, because its conclusions are based on the doctor's unquestioning acceptance of the defendant's claim that he believed the victim was over 18. By the time of the federal prosecution, Zhinin had abandoned that position, and pled guilty to, *inter alia*, three counts of crossing a state line with intent to engage in a sexual act with a person who had not attained the age of 12 years, thereby admitting that he knew the victim's age.

Relying on the defendant's admittedly false claim that he believed the victim was an adult, Dr. Dattilio concluded that Zhinin was "a young man who clearly engaged in the use of poor judgment when he made sexual

contact with an 11 year-old child who he believed to be at least 18 years of age." App. 156. Dattilio found that "[i]t also does not appear that there is a motivation toward a sexually deviant arousal pattern to underage females or anyone underage for that matter." *Id.* Based on interviews with Zhinin's friends and family, Dattilio found that "[t]here was no indication that he has any arousal to children." *Id.* Dattilio ignored his own observations, from the video of Zhinin's sexual activity with the victim, that the victim "certainly has a very youthful face and speaks in a very childish manner," and that the victim "would make statements at times such as, 'I don't know what to do' and subsequently giggle, clearly depicting her immaturity." App. 156.

Moreover, Dattilio apparently believed the defendant's statement that "he had a few text messages on his phone" from adult women pretending to be 14 years old. App. 153. This was another lie. In reality, the defendant's tablet computer contained evidence of the defendant's sexually-oriented instant message conversations with two other minors (Minor #2 and Minor #3). Both of these children told the defendant that they were underage, and the defendant responded that he did not care. In one conversation, the defendant told Minor #2 that he wanted to "do dirty things" to her. Minor #2 first asked if he was joking, then said, "I'm 13. U know that right?" The

defendant responded, "we talked about this" and "like I said you don't act like it so I don't care." App. 53-54. In his conversation with Minor #3, the defendant said, "I love you so much." When Minor #3 responded, "I'm so young tho," the defendant said, "i don't mind that tho cause i love you and i don't care about age." App. 55. In an earlier instant message conversation, the defendant told Minor #3 that he was 19. App. 54.

As government counsel argued to the court at sentencing, this evidence, as well as the evidence of the defendant's conduct in the instant case, completely undermined Dattilio's conclusions that the defendant was not a sexual predator and that the defendant had no sexual interest in minors.[11] Counsel argued, "this was not a mistake, this was not a temporary lapse of judgment, this was a man who plotted his sexual [deviance], his intention was to find minors to sexually abuse and he managed to do that with the victim in this case, not once but twice and almost a third time."

---

[11] After administering a number of psychological tests to the defendant, Dattilio concluded that Zhinin "does not have a deviant sexual arousal pattern to underage females." App. 157. However, Dattilio did not administer any tests designed to determine whether or not the test subject had a sexual interest in minor females. App. 143. He administered tests to determine that the defendant was mentally alert, that he was not a psychopath, and that he was not violent. None of Dattilio's tests contradicted the evidence of the defendant's own actions, which showed that not only did the defendant have a sexual interest in underage females, the defendant was willing to go to considerable lengths to gratify that interest.

App. 97. Counsel argued that because Dattilio's conclusions were based on the defendant's false statement that he believed that the victim was 18, Dattilio's report "cannot be relied on at all." *Id.*

In response to these arguments, defense counsel had little to say. In addressing the psychologist's report, defense counsel admitted that "there is a lot of self-reporting in the – in these reports and evaluations," but asking the court "to not throw the entire report out" because "Dr. Dattilio actually did an independent review of the evidence himself, including of the video to come to his conclusions." App. 103-04.

At sentencing, the district court stated that the court had read and considered Dr. Dattilio's report. App. 113. Based on the defendant's admissions that the fundamental premise of Dr. Dattilio's report was false, Dr. Dattilio's own observations from the video that the victim appeared childish, immature, and sexually naive, and the evidence from the defendant's computer showing that the defendant had solicited not one but three very young females for sexual activity, there was no need for the district court to say more. The psychologist's report was patently unreliable and undeserving of comment. And in any event, the court's response to the report, like its response to all of the other sentencing arguments, is clear on the record – the court set forth the factors it deemed compelling that

outweighed the mitigating factors and, in its view, justified the final sentence.

The record thus shows that Zhinin's arguments that the district court committed procedural error are unavailing. Even if the court did not address Zhinin's arguments in the detail he would prefer, it is clear from the record that the court listened to and considered his arguments, but found his positions unpersuasive. According to *Rita* and *Chavez-Meza*, in light of the imposition of a within-guideline range sentence, the court stated as much as it needed to. The court certainly made clear that it considered the arguments, and determined that a within-guideline sentence was appropriate. Under the law, there was no procedural error, much less plain error.

## C.   The District Court Based Its Sentencing Decision on Proper Considerations.

There was no procedural error in the court's sentencing determination or explanation, and certainly no plain error.

A district court commits procedural error in sentencing where it miscalculates the Guidelines; treats the Guidelines as mandatory; does not adequately explain the sentence imposed; does not properly consider the Section 3553(a) factors; bases its sentence on clearly erroneous facts; or deviates from the Guidelines without adequate explanation. *Gall v. United*

*States*, 552 U.S. 38, 51 (2007). *See also United States v. Grier*, 475 F.3d 556, 570 (3d Cir. 2007) (en banc) (a district court commits procedural error if its sentencing decision was based on a clearly erroneous factual or legal conclusion).

Zhinin contends that the court procedurally erred by basing its sentence on "unbridled and unsubstantiated speculation regarding recidivism." Br. 43. He likens this case to *United States v. Cossey,* 632 F.3d 82 (2d Cir. 2010), in which the sentencing court expressed a view that Cossey's viewing of child pornography was caused by "a gene you were born with. And it's not a gene you can get rid of," and predicted that 50 years in the future, scientific research would confirm that view. *Id.* at 87. As the *Cossey* Court of Appeals observed, "the sentencing hearing focused nearly entirely on the court's belief that Cossey could not but return to viewing child pornography, because of an as-of-yet undiscovered gene." *Id.* at 88. The Second Circuit found that the district court's reliance on its unfounded theory of genetics was plain error.[12] *Id.* at 88-89.

---

[12] In *Cossey,* the defense had submitted reports of two psychological examinations of the defendant, both of which concluded that he was at low risk of reoffending. Unlike the present case, however, there is no indication that conclusions in the *Cossey* reports were based on admitted falsehoods.

This case is not *Cossey.* The district court here did not base the sentence on a single unsupported conjecture. The court in this case was careful and deliberate, considering numerous factors, including the advisory Sentencing Guidelines range, which was life imprisonment; Dr. Dattilio's report; the defendant's arguments for a variance; Zhinin's probable life expectancy; Zhinin's sentence in the Lehigh County case; the defendant's expressions of remorse, which the court found to be genuine; the "devastation and heartache" that Zhinin caused to the victim and her family as well as to Zhinin's own family; and the "atrocious" nature and circumstances of the offense. App. 113-16, 118. The court recognized the need for the sentence to reflect the seriousness of the crime, to promote respect for the law, to provide just punishment for the offense, and to deter others who might be tempted to commit similar crimes. App. 118-19.

Among these considerations, the district court also evaluated the probability that, if given the opportunity, Zhinin would commit future crimes of the sort for which he stood convicted. This analysis is not merely permissible; it is required. Section 3553(a)(2)(C) requires the sentencing court to consider the need to protect the public from further crimes of the defendant. Unlike the *Cossey* court, the district court here did not base its decision on an irrational preconception or odd scientific view. Rather, the

district court carefully and thoughtfully weighed the good in Zhinin's life –
his education; his employment; his close and supportive family; the
absence of any criminal history, substance abuse, or mental health
problems – against the nature and circumstances of Zhinin's offense. The
court noted that Zhinin's crime was not the result of impulse or mistake.
Even if Zhinin could blame his initial contact with the victim on such
factors, Zhinin repeated the crime after having had time to consider the
wrongfulness of his actions, the harm that he was causing to the child, and
the extent to which he was risking everything else that he valued in his life.
App. 117. After committing the crime a second time, Zhinin eagerly
returned for a third offense. *Id.*

From these indisputable facts, the district court drew the inescapable
conclusions: Zhinin wanted to have sexual relations with female children,
and despite all the legal, moral, and material reasons that he should not act
on his desire, Zhinin repeatedly did so. The district court called Zhinin's
actions evilness, and was not wrong to do so. Zhinin had done one of the
most reprehensible acts that a person could do. He repeatedly sexually
abused an 11-year-old child. If that is not evil, the definition of evil must be
narrow indeed.

The court's characterization of the evil as "unmitigable" is solidly grounded in the court's finding that Zhinin, an intelligent and educated man, had repeated his criminal offense even after having been given time to consider the wrongfulness of his action and the adverse consequences that could arise. Nothing suggested either that Zhinin's desires would dissipate or that his ability or inclination to control them would increase with the passage of time.[13]

Zhinin condemns the court for relying "upon its own unsupported theory of human nature, whatever the basis of that theory might be, to speculate about Mr. Zhinin's likelihood of recidivism many years into the future," in contradiction to "Dr. Dattilio's extensive testing and report" and "to Mr. Zhinin's lack of any prior record, as well as the genuine remorse and acceptance of responsibility that the court itself found Mr. Zhinin to have repeatedly expressed." Br. 45. But of course, this is exactly what we employ judges to do. The determination of a criminal sentence is not committed to a doctor's purportedly scientific testing, or required to rest solely on an

---

[13] Zhinin suggests that it was unreasonable for the district court to believe that, if Zhinin were released after a 30-year sentence, he could commit further crimes "even at that advanced stage of his life." Br. 43. When he was sentenced, Zhinin was 34. PSR, p. 3. With good behavior, Zhinin would be released in his late 50s, an age at which most people retain considerable vitality.

offender's record or professed remorse. Rather, judges are called upon to assess all of the facts, and yes, their assessment of both human nature and the characteristics of the defendant and the case, to make a judgment. A court does not commit error in doing so when carrying out its weighty responsibility.

Contrary to Zhinin's assertions, the district court's within-guideline sentence was soundly based in facts and reason. There was no procedural error here, and Zhinin has not demonstrated that the court committed plain error in imposing the within-range sentence.

## II. THE SENTENCE IS SUBSTANTIVELY REASONABLE.

### Standard of Review

This Court reviews the substantive reasonableness of the sentence under an abuse of discretion standard. *United States v. Wise*, 515 F.3d 207, 217-18 (3d Cir. 2008). In reviewing a sentence for substantive reasonableness, this Court "affirm[s] [the sentence] unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." *United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009) (en banc). The burden rests on the party challenging the sentence to show unreasonableness and this Court gives due deference to the district court's judgment. *United States v. Cooper*, 437 F.3d 324, 330 (3d Cir. 2006).

### Discussion

Zhinin argues that the within-guideline range sentence imposed by the district court is substantively unreasonable. Br. 46-48. It is not.

This Court has held that a sentence is substantively reasonable when "the final sentence, wherever it may lie within the permissible statutory range, was premised upon appropriate and judicious consideration of the relevant factors." *United States v. Schweitzer*, 454 F.3d 197, 204 (3d Cir.

2006). "The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Gall,* 552 U.S. at 51. A district court's decision will be "accord[ed] great deference," *Lessner*, 498 F.3d at 204, and will not be reversed "unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided," *Tomko*, 562 F.3d at 568. If the sentence is within the guideline range, the appellate court may, but is not required to, apply a presumption of reasonableness. *Rita,* 551 U.S. at 347.

Zhinin has not met his burden of demonstrating that the within-range sentence was substantively unreasonable. His sole argument in this regard is that "the district court's primary rationale for the sentence – that Mr. Zhinin, a first time offender, is possessed by 'unmitigable evil,' which would cause him to commit new crimes if he was ever to be released from prison, regardless of his age – was patently improper. Accordingly, no reasonable sentencing court would sentence Mr. Zhinin to life imprisonment on this basis." Br. 48. As discussed above, the district court's finding, although expressed in colorful language, was a well-grounded conclusion, based on the facts of the case. Considering the facts that Zhinin repeated his crime, and sought to repeat it a third time, despite having had time to reflect on

the abundant legal, moral, and practical reasons that he should not act on his desire to have sexual contact with young children, the district court reasonably concluded that Zhinin would not control his conduct any better in the future than he had in the past. Therefore, a Guidelines sentence of life imprisonment was warranted by the need to protect the public, as well as multiple other considerations including the "atrocious" nature and circumstances of the crime and the need for the sentence to reflect the seriousness of the crime, to provide just punishment, to promote respect for the law, and to provide general deterrence.

Zhinin has failed to demonstrate that no reasonable sentencing court would have imposed the same sentence for the reasons the district court provided. *Tomko*, 562 F.3d at 568. The fact that other reasonable judges might have decided differently is not controlling. His sentence was not substantively unreasonable.

## CONCLUSION

For the reasons stated above, the government respectfully requests that the judgment of the district court be affirmed.

Respectfully submitted,

WILLIAM M. McSWAIN
United States Attorney


*/s Robert A. Zauzmer*
ROBERT A. ZAUZMER
Assistant United States Attorney
Chief of Appeals
Pa. Bar No. 58126


*/s Emily McKillip*
EMILY McKILLIP
Assistant United States Attorney
Pa. Bar No. 52378


United States Attorney's Office
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
(215) 861-8416

## CERTIFICATION

1. The undersigned certifies that this brief contains 12,569 words, exclusive of the table of contents, table of authorities, and certifications, and therefore complies with the limitation on length of a brief stated in Federal Rule of Appellate Procedure 32(a)(7)(B).

2. I hereby certify that the electronic version of this brief filed with the Court was automatically scanned by OfficeScan Real-Time Scan Monitor, version 10.5, by Trend Micro, and found to contain no known viruses. I further certify that the text in the electronic copy of the brief is identical to the text in the paper copies of the brief filed with the Court.


*/s Emily McKillip*
EMILY McKILLIP
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that this brief has been served on the Filing Users

identified below through the Electronic Case Filing (ECF) system:

> Robert Epstein, Esquire
> Brett G. Sweitzer, Esquire
> Federal Community Defender Office
>    for the Eastern District of Pennsylvania
> Suite 540 West - Curtis Center
> 601 Walnut Street
> Philadelphia, PA  19106

*/s Emily McKillip*
EMILY McKILLIP
Assistant United States Attorney

DATED:  September 5, 2019.